**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

06-61341 CIV-MIDDLEBROOKS/JOHNSON

ARNIE GONZALEZ,
and all others similarly situated,

    Plaintiffs,

v.

CITY OF DEERFIELD BEACH, FLORIDA,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This Cause comes before the Court on Defendant's Motion for Summary Judgment (DE 30), filed January 26, 2007. The Court has reviewed the record and is fully advised in the premises.

**I. Facts**

Plaintiff Arnie Gonzalez ("Gonzalez") filed this action for unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on September 1, 2006. Defendant City of Deerfield Beach ("City") hired Plaintiff as a Firefighter/Emergency Medical Technician (EMT) and employed Plaintiff from April 2, 1999, to October 4, 2005. *See* Gonzalez Dep. at 13, 27.

All firefighters that the City employs are cross-trained either as paramedics or EMT's. There are no employees who are either solely firefighters or paramedics. *See Id.* at 75. As a result of this cross training, anyone in Plaintiff's job can respond to any call where the City has a duty to respond. *See Id.* at 101-102. All uniformed members of the City's Fire Rescue Department are

1

authorized to engage in fire suppression and provide emergency medical services. *See* Stravino Dep. at 152. A firefighter/EMT could participate in any of the following activities: aiming the hose at the fire, rescuing victims, raising ladders, forcing entry, pulling utilities, or helping to rehydrate and rehabilitate exhausted fellow firefighters. *Id.* at 107.

While employed, the Plaintiff worked under the supervision of the Fire Lieutenant. *See* Gonzalez Dep. at 13. Plaintiff possesses both a Florida Standard Firefighting Certification and an EMT Certificate, and he received training in fire suppression techniques. *See Id.* at 22-23 ("I was trained by the Broward Fire Academy. I was also trained by a school in Broward for EMS as an EMT").

The City does not make a distinction between firefighter duties and EMT/paramedic duties. *See* Stravino Dep. at 152. To carry out its duties, Defendant maintains three types of vehicles: fire engines, a platform (large ladder truck), and rescue trucks. *See* Gonzalez Dep. at 30-32. Each one of these trucks is advanced life support (ALS) certified. *See Id.* In riding on any one of these trucks to a fire, Plaintiff would wear standard firefighter gear, known as "turnout gear." *See Id.* at 68-69. Plaintiff would wear different clothing if he were responding to an incident or emergency where there was no fire. *Id.* at 70. The City's rescue trucks were equipped with a place to keep the firefighter's turnout gear, and they contained fire extinguishers and breathing apparatuses. *Id.* at 83, 131.

It is possible for a firefighter/EMT to be called upon to assist with fire suppression even if the person arrived at the scene on a rescue truck, as opposed to engine or platform. *Id.* at 93, 99. Additionally, even if a firefighter/EMT arrives at the scene of a fire on a fire engine, he or she may perform only EMT work. *Id.* at 94.

Defendant operates as paramilitary style organization with a clear chain of command. *See*

Stravino Dep., Vol. 1, at 107. Employees who go outside or do not obey the chain of command are subject to penalties. *See Id.*

While in the Defendant's employ, Plaintiff had the responsibility to engage in fire suppression activity if ordered by his superiors. *See* Gonzalez Dep. at 130-131.[1] Additionally, Plaintiff was specifically ordered to engage in fire suppression activity while working for Defendant. *See Id.* at 133. He was involved in the extinguishing of fires, in removing people from burning structures, and in maintaining the department's fire suppression equipment. *See Id.* at 136. The Chief of Deerfield fire rescue stated that all fire rescue employees have the legal authority and the responsibility to engage in fire suppression when ordered to do so by a commanding officer. *See* Stravino Dep., vol. 2 at 105-106.

**II. Legal Analysis**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See Earley v.*

---

[1] Q. If somebody orders you to engage in fire suppression activity you are now responsible to do it? A. Yes.
  Q. When your are a commanding person, whatever it was, chief, lieutenant, and the department chief was to order you to engage in fire suppression activities, you then had a responsibility to do that? A. Yes.

*Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

**A. The FLSA Exception**

Defendant argues that summary judgment is appropriate because Plaintiff falls within the exemption to the 40-hour overtime standard for employees engaged in fire protection activities contained in Section 7(k) of the FLSA. 29 U.S.C. § 207(k). Section 7(k) is a partial exemption for employees engaged in fire protection and law enforcement activities. Employers need not compensate these employees for overtime until they work more than 212 hours over the course of a 28 day period. *See* 29 C.F.R § 553.32(b). In December 1999, Congress amended the FLSA to add § 203(y) which provides a definition for the term "employee in fire protection activities." The text of the statute is as follows.

> (y) "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who --
>     (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a

> municipality, county, fire district, or State, and
> (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y).

The purpose of the amendment was to "clarify the overtime exemption for employees engaged in fire protection activities." Pub. L. No. 106-151, 113 Stat. 1731 (codified as amended at 29 U.S.C. § 203(y)). *See McGavock v. City of Water Valley*, 452 F.3d 423, 426 (5th Cir. 2006). It is clear that the § 203(y) definition supplants and replaces the old definition of "employee in fire protection activities" found in C.F.R. § 553.210. *See McGavock,* 452 F.3d at 427.

It is the Defendant's burden to prove that Plaintiff meets each of the elements of this statute, as it is well-settled that exceptions or exemptions under the FLSA are to be narrowly construed against the employer asserting them. Their application must be plainly and unmistakably within the terms and spirit of the exemption. *See Arnold v. Kanowsky*, 361 U.S. 388, 392 (1960); *see also O'Neal v. Barrow County*, 980 F.2d 674, 677 (11th Cir. 1993).

In this case, the Plaintiff agrees that he meets all the elements of §203(y) except for the requirement of having the "legal authority and responsibility to engage in fire suppression." *See* Pl. Opp. at 1. As a preliminary matter, I find that there is no material dispute that Plaintiff has the "legal authority" to engage in fire suppression. The Plaintiff was a uniformed member of the Deerfield Beach Fire Rescue, and he was certified as a firefighter by the State of Florida. *See* Gonzalez Dep. at 22-23. It is the fire rescue department's duty to extinguish fires, and it has the legal authority to do so. *See* Stravino Dep., vol. 2 at 105-106. Therefore, it is indisputable that when Plaintiff's superiors order him to fight fires, he has the legal authority to engage in fire suppression.

Plaintiff next argues that he did not have the "responsibility" to engage in fire suppression that § 203(y) requires. The Eleventh Circuit has yet to address exactly what defines "responsibility" in the context of fire suppression. In a similar case, a sister court utilized a definition from the Ninth Circuit in *Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005). *See Diaz v. City of Plantation*, 2006 U.S. Dist. LEXIS 73424 (S.D. Fla. 2006). There the Ninth Circuit stated that "to have 'responsibility' to engage in fire suppression, [plaintiffs] must have some real obligation or duty to do so. If a fire occurs, it must be their job to deal with it." *Cleveland*, 420 F.3d at 990.

I will utilize this definition, and there can be no material dispute that Plaintiff falls squarely within it. Plaintiff attempts to evade being tagged with the responsibility to engage in fire suppression by arguing that the majority of his duties do not involve responding to fires. He correctly notes that in *Cleveland*, the Ninth Circuit found that the cross-trained firefighter/EMT's were not exempt from the FLSA. Not only is that case not binding on this Court, but the facts that lead to the decision there are clearly distinguishable from those in the case at bar.

Unlike in *Cleveland*[2], *all* of Defendant's employees are dual certified as either firefighter/EMT's or firefighter/paramedics. *See* Gonzalez Dep. at 75. Therefore, a dispatcher knows that all the responders to a fire scene have the training to fight the fire. Additionally, the Defendant's rescue trucks contain breathing apparatuses for firefighters, and the Plaintiff would

---

[2] In finding that the dual function paramedics in *Cleveland* did not have the responsibility to engage in fire suppression the Ninth Circuit considered the following; (1) paramedic ambulances did not carry firefighting equipment or breathing apparatuses; (2) dispatchers did not know if they were sending single or dual function paramedics to a call; (3) paramedic ambulances were not regularly dispatched to fire scenes and were dispatched only when there appeared to be a need for advanced life support medical services; (4) dual function paramedics were not expected to wear fire protective gear; (5) dual function paramedics were dispatched to a variety of incidents at which they were expected to perform only medical services; and (6) there was no evidence that a dual function paramedic had ever been ordered to perform fire suppression. *Cleveland*, 420 F.3d at 990.

wear standard firefighter "turn out gear" when responding to a fire scene. Most importantly, the Plaintiff has participated on more than one occasion in suppressing an active fire. These facts reveal that Plaintiff's reliance on *Cleveland* is misplaced.

The reliance on *Diaz* is also inappropriate, as the majority of the plaintiffs in that case were not trained and certified firefighters. For those that were, there was no evidence that they had ever participated in fire suppression, and there was evidence that department policies actually forbade them from engaging in such activity. *See Diaz,* 2006 U.S. Dist. LEXIS 73424 at *39. For Mr. Gonzalez herein, the opposite is true.

In this case, every member of Defendant's fire rescue department is dual certified and trained to fight fires. All uniformed members of the City's Fire Rescue Department are authorized to engage in fire suppression and provide emergency medical services. Plaintiff himself has been ordered to engage in fire suppression on more than one occasion. The Plaintiff was issued the standard "turn out gear" that all firefighters wear when responding to fires, and he wore this equipment at all times when serving at fire scenes. Plaintiff's own deposition statements reveal that he did have the responsibility to engage in fire suppression when his superiors ordered him to do so, and this was confirmed by deposition statements of the fire rescue chief.

When faced with these incontrovertible facts, there is no material issue or dispute that Plaintiff did in fact have the responsibility to engage in fire suppression as stated in § 203(y). In opposition Plaintiff offers only a declaration with a conclusory allegation that he did not have the authority or responsibility to engage in fire suppression. As noted, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment. *Earley,* 907 F.2d at 1081. All the facts and evidence make it inescapably clear that Plaintiff did possess the legal authority and

7

responsibility to engage in fire suppression.

### B. Application of the 20% Rule

Plaintiff argues that even if he did possess the legal authority and responsibility to engage in fire suppression, he is still not an exempt employee because over 20% of his time was spent in non-exempt work as stated in 29 C.F.R. 553.212.[3] However, I agree with the Fifth Circuit's holding in *McGavock* that the passage of § 203(y) has rendered § 553.212's 20% rule obsolete.[4] The 20% rule of § 553.212 was simply an extension of § 553.210, as it provided clarification for the § 553.210 definition of "employee in fire protection activities." It is clear that the 1999 amendment replaced this old definition, and the amendment included no mention of a 20% rule. The Fifth Circuit noted this in *McGavock,* stating

---

[3] § 553.212 Twenty percent limitation on nonexempt work.

(a) Employees engaged in fire protection or law enforcement activities as described in §§ 553.210 and 553.211, may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities. For example, firefighters who work for forest conservation agencies may, during slack times, plant trees and perform other conservation activities unrelated to their firefighting duties. The performance of such nonexempt work will not defeat either the section 13(b)(20) or 7(k) exemptions unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part.

[4] The Eleventh Circuit has not addressed this issue after the passage of § 203(y). While I believe that the appellate court would agree with the Fifth Circuit's analysis were it to reach the issue today, the Plaintiff's claim would fail even under the 80/20 rule as previously applied in this Circuit. In *Falken v. Glynn County*, 197 F.3d 1341, 1350-1351 (11th Cir. 1999), the court stated

"an employer of dual-function EMS/firefighters will lose the fire protection activities exemption under the 80/20 rule only if the employees spend more than 20% of their total work hours on activities unrelated to either firefighting or medical services. If waiting fire department employees perform other public services, by engaging in activities analogous to § 553.212(a)'s example of forest conservation, the employer risks losing the exemption. If the employees perform firefighting and EMS functions, and do nothing during their waiting time other than these duties and related or incidental corollary tasks, however, then the employer's burden of proof under the 80/20 rule likely would be easily satisfied."

Here *all* of Plaintiff's work is either fire suppression or medical service. There is no evidence that he spent any time at all on any work even remotely analogous to forest conservation. Therefore, even if the 80/20 rule applied, it would not save his claim.

8

> The only purpose of Congress in amending the statute that is clear to us, is that it intended all emergency medical technicians (EMTs) trained as firefighters and attached to a fire department to be considered employees engaged in fire protection activities even though they may spend one hundred percent of their time responding to medical emergencies. Congress did not otherwise address the 20% rule.

*See McGavock*, 452 F.3d at 427.

The legislative history of § 203(y) also supports the argument that the 20% rule no longer applies to firefighter/EMT's.[5]

It is simply illogical to argue that when all of a fire rescue department's employees are trained and certified by the state to suppress fires, the FLSA exemption applies only to those employees who spend 80% or more of their time at fire scenes. The § 203(y) amendment makes it clear that Congress did not intend for this unreasonable dichotomy to exist.

The new statute, § 203(y), provides a definition previously provided by § 553.210 and its subsidiary regulation § 553.212. These regulations are now obsolete and without effect. The 20%

---

[5] Representative Boehner observed:

In recent years, however, some courts have narrowly interpreted the 7(k) exemption and held that emergency medical services personnel do not come within the exemption because the bulk of their time is spent engaged in nonfire protection activities. These lawsuits have resulted in State and local governments being liable for millions of dollars in back pay, attorneys' fees and court costs. So there is a real need to modernize this area of the Fair Labor Standards Act and to clearly specify who can be considered a fire protection employee for purposes of the exemption. 145 Cong. Rec. H11,499-02, H11500 (daily ed. Nov. 4, 1999)(statement of Rep. Boehner).

Representative Ehlich, the sponsor of § 203(y), further stated:
[F]rom its inception, the Fair Labor Standards Act has exempted fire protection employees from the traditional 40-hour workweek. Historically, any emergency responder paid by a fire department was considered to be a fire protection employee. However, recent court interpretations of Federal labor statutes have rendered this definition unclear. [Section 203(y)] seeks to clarify the definition.

*Id*. (statement of Rep. Ehlich).

Congressman Clay stated that the bill:
...provides that where firefighters are cross-trained and are expected to perform both firefighting and emergency medical services, they will be treated as firefighters for the purpose of overtime. However, where emergency medical technicians are not cross-trained as firefighters, they will remain outside the purview of 7(k) and will be entitled to overtime after 40 hours a week...

rule no longer applies to the Plaintiff, and it therefore does not remove him from the statutory definition of "employees engaged in fire protection activities." Therefore, Plaintiff falls within the § 207(k) exemption.

Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (DE 30) is GRANTED.

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 20th day of February 2007.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

copies to counsel of record